IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| WALTER H. LENHARD, III | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIBERTY BANKERS LIFE INSURANCE | : | |
| COMPANY, CONTINENTAL LIFE | : | |
| INSURANCE COMPANY, and BRADFORD | : | |
| A. PHILLIPS, et al. | : | NO. 16-cv-2385 |


ORDER


AND NOW, this 26th day of October 2016, upon consideration of Defendants' Motion to

Dismiss, or in the Alternative, for Jurisdictional Discovery (Doc. No. 10), Plaintiff's response in

opposition (Doc. No. 12), Defendants' reply (Doc. No. 14), and Plaintiff's sur-reply (Doc. No.

21), it is hereby ORDERED as follows:

1.  The claim for tortious interference (Count 3) is dismissed without prejudice.

2.  Defendants' Motion to Dismiss, or in the Alternative, for Jurisdictional Discovery
    (Doc. No. 10) is DENIED.

3.  This matter is STAYED pending resolution of the Texas matter.

4.  The Clerk of the Court shall administratively close this case. Plaintiff may seek to
    reopen this case, if necessary, within 30 days of the entry of final judgment in the
    Texas matter.

I.    Background

In December 2014, Lenhard and Liberty Bankers Life Insurance Company ("Liberty

Bankers") entered in a stock purchase agreement in which Liberty Bankers agreed to purchase

Lenhard's controlling interest in Continental Life Insurance Company ("Continental") and two

other companies. Compl. at ¶¶ 16-18. Liberty Bankers agreed to pay Lenhard $8,500,000,

adjusted for any change in Continental's statutory capital and surplus from December 31, 2013,

to the last day of the month immediately preceding the closing date. Id. at ¶ 19. In April 2015,

the parties entered in a post-closing agreement in which Continental agreed to deliver to Liberty

Bankers a review of the adequacy of Continental's statutory reserves by a designated actuary. Id.

at ¶¶ 24-26. In addition, Continental and Lenhard entered in a consulting agreement in which

Liberty Bankers promised to pay Lenhard $28,000 per month from April 30, 2015, through April

30, 2018, for services related to Continental, such as providing information to Liberty Bankers.

Id. at ¶¶ 29-32; Def. Mot. Ex. B-1. In August 2015, the parties agreed to a final amount for the

purchase price that reflected a reduction of $803,493.97. Compl. at ¶ 28.

In March 2016, following additional internal review of Continental's statutory capital and

surplus, Liberty Bankers asserted a notice of claim for indemnification against Lenhard, stating

that Continental's reserves were understated by $1,800,000, which constituted a breach of the

stock purchase agreement. Id. at ¶¶ 35-36. Lenhard responded to the notice, disputing Liberty

Bankers' conclusions and asking for negotiation. Plf. Br. at Ex. C-2. On May 3, 2016, Liberty

Bankers and Continental filed suit in Texas state court alleging claims of fraud and

misrepresentation, negligent misrepresentation, and breach of contract. Def. Mot. Ex. A-1.

Less than two weeks later, on May 16, 2016, Lenhard filed this action pursuant to 28

U.S.C. § 1332(a) against Liberty Bankers, Continental, and Bradford A. Phillips, the CEO of

Liberty Bankers. Lenhard's suit raises three claims: (1) a claim for a declaration that the

valuations Lenhard performed pursuant to the stock purchase agreement were proper and that he

did not breach the agreement, (2) a breach of contract claim against Continental for termination

of the consulting agreement, and (3) a claim of tortious inference against Liberty Bankers and

Phillips for influencing Continental to terminate the consulting agreement with Lenhard. Compl.

at ¶¶ 45-70. Defendants filed a motion to dismiss or, in the alternative, for jurisdictional

discovery, arguing (1) the complaint should be dismissed for a lack of complete diversity under

Federal Rule of Civil Procedure 12(b)(1), (2) the claim for declaratory judgment should be

dismissed because there is a pending coercive action in Texas, and (3) the claim for tortious

interference should be dismissed under Rule 12(b)(6). Def. Mot. at 1. Lenhard consented to the

dismissal of the tortious interference claim. Plf. Br. at 13.

II.     Diversity Jurisdiction

        A.  Legal Standard

        As a court of limited jurisdiction, "[a] federal court is bound to consider its own

jurisdiction preliminary to consideration on the merits." Trent Realty Assoc. v. First Fed. Sav. &

Loan Ass'n of Phila., 657 F.2d 29, 36 (3d Cir. 1981). In order for the Court to have jurisdiction

over Lenhard's action under § 1332(a), there must be complete diversity of the parties, that is,

the citizenship of Lenhard must be diverse from the citizenship of each Defendant. See Lincoln

Prop. Co. v. Roche, 546 U.S. 81, 89 (2005). The burden of establishing diversity jurisdiction

rests on the party asserting it. Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010). A party generally

meets this burden by proving diversity of citizenship by a preponderance of the evidence.

McCann v. Newman Irrevocable Trust, 458 F.3d 281, 289-90 (3d Cir. 2006).

        A natural person's state of citizenship is the state of his or her domicile. Swiger v.

Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008). The domicile of an individual is "his

true, fixed and permanent home and place of habitation. It is the place to which, whenever he is

absent, he has the intention of returning." <u>Vlandis v. Kline</u>, 412 U.S. 441, 454 (1973). In determining an individual's domicile, a court considers several factors, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." <u>Krasnov v. Dinan</u>, 465 F.2d 1298, 1301 (3d Cir. 1972). Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration. <u>McCann</u>, 458 F.3d at 286-87.

B.  Analysis

Liberty Bankers is an Oklahoma insurance corporation with its principal place of business in Texas, Continental is a Pennsylvania insurance corporation with its principal place of business also in Texas, and Phillips is a domiciliary of Texas. Compl. at ¶¶ 8-10. Defendants claim that Lenhard is a citizen of Pennsylvania, rather than Florida. However, Lenhard adequately demonstrates that his domicile is Florida. Lenhard and his wife have owned a home in Jupiter, Florida, since 2001; he considers his Florida residence his permanent residence and has done so since 2001. Although his wife owns a house in Pennsylvania and he stays in that house when he is in Pennsylvania, he does not consider the Pennsylvania house his permanent residence. In addition, Lenhard's voter card indicates he has been registered to vote in Florida since 2001. Lenhard possesses a Florida driver's license issued in 2013, and states that he has possessed a Florida driver's license since approximately 2001. Further, Lenhard declared that most of his vehicles have been registered in Florida since approximately 2001, that his banking, insurance, and financial accounts are based in Florida, and that his office is located in Florida, as is his physician.

Defendants claim that Lenhard is a citizen of Pennsylvania on the basis of unsuccessful

4

attempts to serve Lenhard for the Texas action. While trying to serve Lenhand at his Florida address, Defendant's process server could not locate Lenhard, and a neighbor stated that "there is nobody staying [t]here now." Def. Mot. Ex. A-3. Subsequently, when Defendants attempted to serve Lenhard at his Pennsylvania address, the process server observed that there was a dog outside the house, although no one answered the door. Id. Ex. A-5. That an individual travels away from his permanent residence does not demonstrate that he no longer regards his permanent residence as his domicile. See Mzamane v. Winfrey, 693 F. Supp. 2d 442, 472 (E.D. Pa. 2010). Lenhard has sufficiently demonstrated that his domicile is in Florida, and thus complete diversity exists.

III.    Jurisdiction over an Action for Declaratory Judgment and Coercive Relief

        A.  Legal Standard

        Under the first-filed rule, in cases of federal concurrent jurisdiction, the district court that first has possession of the subject must decide it. EEOC v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (quoting Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)). The rule "encourages sound judicial administration and promotes comity." Id. However, the rule traditionally applies between federal courts of equal rank rather than between concurrent matters in federal and state courts. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 817 (1976). As between federal and state courts, the general rule is that the pendency of a state court action is no bar to proceedings concerning the same matter in the federal court having jurisdiction, although the federal court may abstain from exercising jurisdiction under certain circumstances. Id. However, for declaratory actions, the Declaratory Judgment Act confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). Although a district court may

exercise jurisdiction over a suit for declaratory relief, the court is "under no compulsion to exercise that jurisdiction." Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942).

For actions for mixed relief, the Third Circuit has "never ruled on the legal standard a district court must apply when addressing whether it may decline jurisdiction when both declaratory and legal relief are claimed." Reifer v. Westport Ins. Corp., 751 F.3d 129, 135 n.5 (3d Cir. 2014). However, "[t]o apply the Colorado River standard to actions containing both declaratory judgment and coercive claims without an analysis of the facts at hand would be to ignore the Supreme Court's specific recognition that declaratory judgment actions necessitate a different treatment than other types of cases." ITT Indus. v. Pac. Emp'rs. Ins. Co., 427 F.Supp.2d 552, 557 (E.D.Pa. 2006) (emphasis added). For mixed relief actions, the majority of courts within the district have used the "heart of the action" approach to determine whether the standard in Wilton or Colorado River should apply. Reifer, 751 F.3d at 135 n.5. Under the "heart of the action" test, the court would apply Wilton if the outcome of the coercive claims hinges on the outcome of the declaratory ones, and apply Colorado River if the opposite is true. See, e.g., Hartford Ins. Co. of S.E. v. John J., 848 F.Supp.2d 506, 510 (M.D.Pa. 2012); Coltec Indus. Inc. v. Continental Ins. Co., 2005 WL 1126951, at *2 (E.D.Pa. 2005).

B.  Analysis

Lenhard's declaratory judgment claim seeks the determination that he properly performed valuations and did not breach the stock purchase agreement. Lenhard's breach of contract claim alleges Continental terminated the consulting agreement based on unfounded allegations of his "act of fraud." Compl. at ¶¶ 40-42. Although an "act of fraud" is a ground upon which the consulting agreement may be terminated, Lenhard argues that because he has committed no such act, there is no basis for termination, and thus Continental breached the consulting agreement.

Def. Mot. Ex. B-1 at 2; Compl. at ¶¶ 56-58. Based on these facts, to provide Lenhard relief under the breach of contract claim, the Court must first decide that Lenhard has not committed an act of fraud. Therefore, under the "heart of the matter" inquiry, resolution of the breach of contract claim depends on the declaratory judgment claim.

   Next, the Court must consider whether to decline jurisdiction over this mixed case for declaratory and coercive relief. In Brillhart, the Supreme Court announced a set of non-exclusive factors: (1) the scope of the pending state court proceeding, (2) the nature of the defenses open there, (3) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, and (4) whether necessary parties have been joined or are amenable to process in that proceeding. Brillhart, 316 U.S. at 495. Subsequently, the Third Circuit has enumerated other non-exhaustive factors: (5) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy, (6) the convenience of the parties, (7) the public interest in settlement of the uncertainty of the obligation, (8) the availability and relative convenience of other remedies, (9) a general policy of restraint when the same issues are pending in a state court, (10) avoidance of duplicative litigation, and (11) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata. Reifer, 751 F.3d at 140-46 (citing United States v. Com. of Pa. Dept. of Envtl. Res., 923 F.2d 1071, 1075 (3d Cir. 1991).

   Regarding the Brillhart factors, first, the scope of Texas action is capable of encompassing the claims brought in this case, since it includes claims of fraud and misrepresentation and negligent misrepresentation, and breach of the stock purchase agreement and consulting agreement. These claims are based on issues of whether Lenhard failed to disclose or supplied material misrepresentations regarding Continental, and failed to cooperate to

examine the errors and omissions in the information provided. These issues encompass nearly all of those in the suit before this Court. Therefore, the first factor weighs in favor of abstention. Second, both actions raise only state law claims, and the nature of the defenses available in state court is the same as those in federal court. Even if this action did remain in federal court, the federal court would be required to apply state law. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); see also Liggon-Redding v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011). This factor also supports abstention. Third, the claims of all parties in interest will be satisfactorily adjudicated in state court. This Court sees no reason why Texas court cannot protect the interests of the parties. Therefore, this factor weighs in favor of abstention. Fourth, joinder of necessary parties is not relevant, since necessary parties can be joined in state court, and there is no party denied joinder in federal court.

Next, this Court considers factors added by the Third Circuit. As to the fifth factor, a federal court declaration on the matter, just the same as a state court declaration, would resolve the uncertainty that gave rise to the controversy. Therefore, this factor is neutral. Sixth, the convenience of the parties is served by adjudicating the overlapping actions in one forum. Liberty Bankers and Continental indicate their principal place of business is Texas filed their suit in Texas court. The federal forum in the Eastern District of Pennsylvania is not necessarily convenient for Lenhard, who is domiciled in Florida. Therefore, this factor supports abstention. Seventh, there is no particular public interest in settlement of the uncertainty of the obligation, and thus this factor is neutral.

Eighth, there exist remedies of relative convenience to Lenhard, who may raise issues in his complaint as counterclaims to the Texas action, thereby avoiding the inconvenience of raising the same state law issues before state court and then federal court. Ninth, when the same factual

and legal issues are pending in a state court, the general policy of restraint supports abstention. Tenth, desirability of avoiding duplicative litigation weighs in favor of abstention, since the same issues that would be litigated in this district would also necessarily be determined in the Texas action, and courts should avoid the risk of inconsistent judgments. Finally, given that the two suits were filed within two weeks of each other, and it is unclear whether Lenhard was aware of the Texas action when he filed suit in federal court, although this Court has an interest in preventing of the use of the declaratory action as a means to provide another forum in a race for res judicata, this factor is neutral.

    In all, the inquiry supports abstention, and accordingly, this suit will be stayed pending the resolution of the Texas action. Chavez v. Dole Food Co., Inc., No. 13-4144, 2016 WL 4578641, at *11 (3d Cir. Sept. 2, 2016).

IV.    Conclusion

    For the foregoing reasons, Defendants' motion is DENIED, the claim for tortious interference (Count 3) is dismissed without prejudice, and this matter is STAYED pending resolution of the Texas matter between the parties.


                                        BY THE COURT

                                        /s/ Legrome D. Davis

                                        Legrome D. Davis, J.